UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BRADLEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THOMAS P. SCHMALZRIED, M.D., et al.,<br><br>　　　　Defendants. | Case No. 22-cv-00414-HSG<br><br>**ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 15 |

Pending before the Court is Plaintiff William Bradley's motion to remand. Dkt. No. 15 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion to remand and **DENIES** the request for attorneys' fees.

**I.   BACKGROUND**

Plaintiff filed this product liability action in San Francisco County Superior Court in March 2021. *See* Dkt. No. 1-3, Ex. 3 ("Compl."). Plaintiff alleges that in December 2008, he received a Pinnacle Hip System implant during a hip replacement surgery. *See id.* at ¶¶ 1, 60–62. According to Plaintiff, his implant leaked toxic amounts of cobalt and chromium that damaged the tissue and bone surrounding Plaintiff's hip. *See id.* at ¶¶ 1, 38, 60–66. Plaintiff also contends that the toxic metals may have accumulated in his vital organs. *See id.* at ¶ 62. Plaintiff eventually had another surgery to remove the implant. *See id.* at ¶¶ 64–66.

Plaintiff alleges that several entities are responsible for the defective implant. *First*, Plaintiff alleges that Defendants Johnson & Johnson; Medical Device Business Services, Inc.; DePuy Synthes Sales, Inc.; and Johnson & Johnson Services, Inc. (the "J&J Defendants") designed, manufactured, marketed, distributed, and sold the implant. *Id.* at ¶¶ 10, 40, 43, 68.

*Second*, Plaintiff alleges that the remaining Defendants (the "Distributor Defendants") helped the J&J Defendants with the design, promotion, marketing, distribution, and sale of the implant.[1] *Id.* at ¶¶ 6, 13, 17–19, 21–26.

Plaintiff brings causes of action against all Defendants for strict product liability, negligence, fraud, negligent misrepresentation, breach of implied warranties, and breach of express warranty under California law. *See id.* at ¶¶ 67–111. The J&J Defendants removed this action in January 2022, arguing that the Distributor Defendants were fraudulently joined and that their California citizenship should therefore be disregarded for purposes of diversity jurisdiction. *See* Dkt. No. 1 ("Notice of Removal") at ¶¶ 9–19. Plaintiff now moves to remand the action back to state court. *See* Mot.

## II. LEGAL STANDARD

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to federal court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1). To properly invoke diversity jurisdiction, the defendant bears the burden of proving that the parties in the action are completely diverse, meaning that "each plaintiff [is] of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).

However, a district court may disregard a non-diverse party and retain federal jurisdiction if the party resisting removal can show that the non-diverse party was fraudulently joined. *See Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). The Ninth Circuit holds that there are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1044).

---

[1] Specifically, the Distributor Defendants include Thomas P. Schmalzried, M.D.; Thomas P. Schmalzried, M.D. A Professional Corporation; Pinnacle West Orthopaedics, Inc.; Gregory T. Switzer; and Aimee Anselmo. *See* Compl. at ¶¶ 5–6, 11–16, 19.

2

In the absence of actual fraud, therefore, a defendant must "show[] that an individual joined in the action cannot be liable on any theory." *Id.* (quotations omitted) (alterations omitted). "[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (quotations omitted) (emphasis in original). In other words, joinder is only fraudulent if it is "obvious according to the settled rules of the state that [the plaintiff] has failed to state a claim against [the resident defendant]." *See Hunter*, 582 F.3d at 1046 (quotation omitted).

Courts have found fraudulent joinder "where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on its claims against the allegedly fraudulently joined defendant," including where "a plaintiff is barred by the statute of limitations from bringing claims against that defendant." *Grancare*, 889 F.3d at 548. By contrast, fraudulent joinder is not established where "a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.* at 548–49 (citing *Hunter*, 582 F.3d at 1046). There is a "general presumption against fraudulent joinder," and defendants who assert that a party is fraudulently joined carry a "heavy burden." *Hunter*, 582 F.3d at 1046.

### III. DISCUSSION

The parties agree that Distributor Defendants are all citizens of California. *Compare* Compl. ¶¶ 5–6, 11–19, *with* Notice of Removal ¶¶ 13–16. Thus, because Plaintiff is also a California citizen, the Distributor Defendants' citizenships would ordinarily defeat federal diversity jurisdiction. However, the J&J Defendants argue that all of Plaintiff's claims against Distributor Defendants "have no possibility of success under both federal and California law." Dkt. No. 29 ("Opp.") at 2. As such, the J&J Defendants state that Distributor Defendants were fraudulently joined and that their California citizenship should not defeat federal diversity jurisdiction. *Id.* at 3.

Specifically, the J&J Defendants argue that Plaintiff has not established a cause of action against the Distributor Defendants because Plaintiff's state law claims are preempted. *See id.* at

5–11. The Court is not persuaded.

The J&J Defendants argue that Plaintiff's claims against the Distributor Defendants are preempted—and therefore cannot possibly succeed—because federal law preempts such claims against non-manufacturers of products approved by the Food and Drug Administration ("FDA"). *See id.* at 5–11. The J&J Defendants rely on the Supreme Court's opinions in *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013). In both cases, the Supreme Court considered whether state law claims brought against generic drug manufacturers were preempted by FDA drug regulations. The J&J Defendants suggest that those holdings should apply with equal force to the medical device at issue here. *See* Opp. at 9–11.

In *Mensing*, the Supreme Court held that FDA drug regulations preempt state failure-to-warn claims against generic drug manufacturers because the regulations require the manufacturers to use the same FDA-approved labels and warnings as the brand-name equivalents. *See* 564 U.S. at 613–24. The Court explained that under the regulatory scheme, "brand-name and generic drug manufacturers have different federal drug labeling duties." *Id.* at 613. "A brand-name manufacturer seeking new drug approval is responsible for the accuracy and adequacy of its label," whereas "[a] manufacturer seeking generic drug approval, on the other hand, is responsible for ensuring that its warning label is the same as the brand name's." *Id.* The Supreme Court concluded that the generic manufacturers could not be held liable under state law because they did not have the authority to change the drugs' labels. *Id.* at 613–18.

Similarly, the Supreme Court in *Bartlett* held that FDA drug regulations preempt state design defect claims against generic drug manufacturers that are based on the adequacy of a drug's warning label. Relying on *Mensing*, the Court reasoned that the manufacturers could not be held liable because FDA regulations prevent the manufacturers from changing the composition of the drug or its labels once it is approved by the FDA. *See Bartlett*, 570 U.S. at 482–87. In other words, the Supreme Court reasoned that given the nature of the FDA regulations that apply to generic drugs, the defendants in *Mensing* and *Bartlett* could not comply with both FDA regulations and state court labeling requirements.

4

Neither *Mensing* nor *Bartlett* explicitly controls here. The J&J Defendants acknowledge that the Pinnacle Hip System is not an FDA-approved drug like those at issue in *Mensing* and *Bartlett*. *See* Opp. at 10–11. The FDA regulations that the Court considered in those cases are thus inapplicable. The Pinnacle Hip System is a medical device that was approved under the FDA's clearance process under Section 510(k) of the Medical Device Act. *Id.* The J&J Defendants concede that "the reasoning of *Mensing* has not yet been applied to distributors of 510(k)-cleared medical devices . . . ." *Id.* at 10. Nevertheless, they urge that its reasoning should be extended to this context because the Distributor Defendants lacked control over the design and labeling of the Pinnacle Hip System under Section 510(k). *See id.* at 12–14.

Contradicting Plaintiff's allegations, the J&J Defendants state that the Distributor Defendants "did not play any role in the manufacture or design of the Pinnacle Cup System." *See id.* at 7, n.2; *see also* Dkt. No. 29-1, Ex. 3 at ¶¶ 2–4; *id.*, Ex. 6 at ¶¶ 14–18. The J&J Defendants further suggest that Section 510(k) prohibited the Distributor Defendants from influencing the design of or labels for the device. *See* Opp. at 10. None of the regulations that the J&J Defendants cite, however, appear to prohibit distributors from altering the labels or packaging of Section 510(k) medical devices. To the contrary, 21 C.F.R. § 807.20(a)(3) appears to contemplate that parties may "[r]epackage[] or relabel[] a device." *Accord In re Stryker LFIT V40 Femoral Head Prod. Liab. Litig.*, No. 17-CV-10829, 2017 WL 3815937, at *3–4 (D. Mass. Aug. 31, 2017).

Unlike the regulations at issue in *Mensing* and *Bartlett*, the Supreme Court has also acknowledged that the Section 510(k) clearance process does not impose specific safety or design requirements. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478–79 (1996) (describing the Section 510(k) clearance process); *see also* 21 C.F.R. § 807.81 (describing premarket notification submission requirements for devices under Section 510(k)). Rather, such devices may be marketed "without further regulatory analysis" as long as the FDA concludes that they are "substantially equivalent" to a pre-existing approved device. *See id.* (quotation omitted); *see also In re: DePuy Orthopaedics, Inc.*, No. 3:11-MD-2244-K, 2016 WL 6268090 at *3 (N.D. Tex. Jan. 5, 2016). It is simply not enough to claim that the Distributor Defendants lacked control over the device's labels and packaging. Critically, the J&J Defendants have failed to explain what actual

conflict exists between the FDA regulations and state labeling requirements.

Instead, the J&J Defendants rely heavily on *Hall v. OrthoMidwest, Inc.*, 541 F. Supp. 3d 802, 808 (N.D. Ohio 2021). *See* Opp. at 10. Respectfully, the Court does not find persuasive *Hall*'s brief analysis, which does not grapple with the language of the regulations or the Supreme Court opinion in *Medtronic*. In *Hall*, the district court also declined to find preemption under *Mensing* given the posture of the case and proceeded to evaluate the merit of the plaintiff's state law claims. *See Hall*, 541 F. Supp. 3d at 808–12. In any event, the Court agrees with those courts which have held that ambiguity with respect to preemption must be resolved in favor of remand. *See, e.g.*, *Sanghvi v. DJD Med., Inc.*, No. CV 21-11900-PBS, 2022 WL 363899, at *2 (D. Mass. Jan. 11, 2022) (collecting cases); *Marie v. Biomet, Inc.*, No. 3:16-CV-872 RLM-MGG, 2017 WL 2060655 (N.D. Ind. May 15, 2017); *Fronczak v. Depuy Orthopaedics, Inc.*, No. 8:14-CV-2162-T-30MAP, 2014 WL 5175857, at *3 (M.D. Fla. Oct. 14, 2014).

\*     \*     \*

Accordingly, the Court finds that Defendants have failed to meet their "heavy burden" of establishing fraudulent joinder.[2] *See Hunter*, 582 F.3d at 1042. Because there is not complete diversity of citizenship, the Court lacks subject matter jurisdiction and thus **GRANTS** the motion to remand.

## IV.  REQUEST FOR ATTORNEYS' FEES

Plaintiff asserts that the J&J Defendants' argument is so frivolous that the Court should award attorneys' fees and costs for defending its motion to remand. Attorneys' fees and costs are only available under 28 U.S.C. § 1447(c) if the removing defendant "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Removal is not objectively unreasonable "solely because the removing party's arguments lack merit." *Grancare*, 889 F.3d at 552. Here, Plaintiff urges that attorneys' fees are appropriate

---

[2] The J&J Defendants also argue that Dr. Schmalzried is fraudulently joined because Plaintiff cannot succeed on any of its state law claims against him. *See* Opp. at 11–16. As explained above, however, the claims against the other Distributor Defendants are not preempted, and the J&J Defendants cannot establish diversity jurisdiction. Therefore, the Court need not consider whether Plaintiff can succeed on its claims against Dr. Schmalzried.

6

because other courts have previously rejected the J&J Defendants' preemption argument. *See* Mot. at 13. Although the Court agrees that remand is appropriate under the circumstances, the Court does not find that the J&J Defendants' arguments were frivolous so as to warrant an award of attorneys' fees, given the lack of any clearly controlling authority. The Court therefore **DENIES** Plaintiff's request for attorneys' fees and costs.

## V.  CONCLUSION

The Court **GRANTS** the motion to remand and **REMANDS** the case to San Francisco County Superior Court. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:  7/13/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge